IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DIANA LETTIE-MARIE CRUMMETT,
        Plaintiff,

v.                                                              Civil Action No. 3:21cv120

BUNN-O-MATIC CORPORATION &
ROYAL CUP, INC.,
        Defendants.

## OPINION

In early 2019, plaintiff Diana Lettie-Marie Crummett worked as a server at Fredericksburg's Country Cookin' restaurant. As part of her server duties, she attempted to brew tea on the restaurant's tea brewer. But the filter basket on the tea brewer detached and fell onto her, causing burn injuries. Crummett asserts three claims against the tea brewer's distributor, Royal Cup, Inc. ("Royal Cup"): negligence (Count One); breach of implied warranty (Count Two); and breach of express warranty (Count Three).

Royal Cup now moves to exclude Crummett's expert, Mr. Byron Reed, Professional Engineer, and for summary judgment on all of Crummett's claims.[1] (ECF No. 29.) For the reasons discussed below, the Court will grant Royal Cup's motion to exclude Mr. Reed. The Court will also grant Royal Cup's motion for summary judgment as to Counts One and Two. The Court will deny Royal Cup's motion as to Count Three.

---

[1] Royal Cup and the other defendant in this case—Bunn-O-Matic Corp. ("Bunn-O-Matic")—jointly filed the motions to exclude and for summary judgment. On November 3, 2021, Bunn-O-Matic advised the Court that it and Crummett had reached a settlement. Thus, this Opinion addresses Crummett's claims only as to Royal Cup.

## I. **FINDINGS OF FACT**[2]

On August 28, 2014, Country Cookin' and Royal Cup entered into an agreement ("the Agreement") under which Royal Cup would "provide service, installation and on-going maintenance of all coffee and tea brewing equipment used by [Country Cookin'] including equipment owned by [Country Cookin']." (ECF No. 1, Ex. A ¶ 3.) When Country Cookin' and Royal Cup entered into the Agreement, they agreed to a lease arrangement. In exchange for money and exclusivity rights, Royal Cup agreed to "transfer . . . the right to possession and use" of its coffee and tea brewing equipment to Country Cookin'. *See* Va. Code § 8.2A-103(1)(j) (defining "lease" as "a transfer of the right to possession and use of goods for a term in return for consideration"). In other words, Royal Cup acted as lessor and Country Cookin' as lessee. *Id.* §§ 8.2A-103(1)(n), (p). Under the arrangement, Royal Cup provided Country Cookin' with a Bunn-O-Matic Model TB6 tea brewer ("tea brewer"). On January 4, 2019, as part of her server duties at Country Cookin', Crummett attempted to make tea on the tea brewer (which, under the Agreement, Royal Cup owned). The filter basket from the tea brewer fell on Crummett as she stood in front of it, causing her burn injuries.

---

[2] The following facts include those that the parties do not dispute and those that this Court concludes a reasonable jury could find. Because Royal Cup moves for summary judgment, the Court views the evidence in the light most favorable to Crummett. *See United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) ("On summary judgment, we must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence.").

## II. DISCUSSION

Crummett sues Royal Cup for negligence, breach of implied warranty, and breach of express warranty. Under Virginia law,[3] a plaintiff who brings a products liability claim for negligence or breach of implied warranty must prove—

> "(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands." *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975). A product can be "unreasonably dangerous" if defective in assembly or manufacture, *see, e.g.*, *Matthews v. Ford Motor Co.*, 479 F.2d 399, 400 (4th Cir. 1973), if imprudently designed, *see, e.g.*, *Dreisonstok v. Volkswagenwerk, A.G.*, 489 F.2d 1066, 1071 (4th Cir. 1974), or if not accompanied by adequate warnings about its hazardous properties, *see, e.g.*, *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79, 85–86 (4th Cir. 1962).

*Bly v. Otis Elevator Co.*, 713 F.2d 1040, 1042–43 (4th Cir. 1983). "Whether a [defendant] was negligent involves an objective inquiry." *Evans v. Nacco Materials Handling Grp., Inc.*, 295 Va. 235, 247, 810 S.E.2d 462, 469 (2018). "The product need not incorporate the best or most highly-advanced devices," but the Court should "consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993). "[U]nder both theories, [the] plaintiff is required to prove that any breach of duty . . . was the proximate cause" of the plaintiff's injuries. *Butler v. Navistar Int'l Transp. Corp.*, 809 F. Supp. 1202, 1207 (W.D. Va. 1991).

---

[3] When a federal court sits in diversity, as the Court does here, the substantive law of the forum state applies. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (explaining that there exists no federal common law governing tort claims). Because Crummett's injuries occurred in Virginia, Virginia law governs. *Frye v. Commonwealth*, 231 Va. 370, 376, 345 S.E.2d 267, 272 (1986) ("[Q]uestions of substantive law are governed by the law of the place of the transaction.").

3

For express warranties by a lessor, Virginia Code § 8.2A-210(1) provides:

> (a) Any affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain *creates an express warranty* that the goods will conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain *creates an express warranty* that the goods will conform to the description.
>
> (c) Any sample or model that is made part of the basis of the bargain *creates an express warranty* that the whole of the goods will conform to the sample or model.

Va. Code § 8.2A-210(1) (emphases added)[4]; *see also Margarito v. Life Prods. Corp.*, No. 4:97cv95, 1998 WL 171332, at *3 (E.D. Va. Apr. 1, 1998) (citing Virginia Code § 8.2A-210 when explaining that "Virginia has extended the warranty provisions of the UCC to leases"). The lessor need not "use formal words, such as 'warrant' or 'guarantee,' or . . . have a specific intention to make a warranty," and a lessee need not prove reliance as a prerequisite to recovery. Va. Code § 8.2A-210(2); *see Yates v. Pitman Mfg., Inc.*, 257 Va. 601, 607, 514 S.E.2d 605, 608 (1999) (quoting *Daughtrey v. Ashe*, 243 Va. 73, 77–79, 413 S.E.2d 336, 338–39 (1992)).

### *A. Motion to Exclude Mr. Reed's Testimony*

Because the Court serves as the "gatekeeper[] of expert testimony,"[5] the Court first addresses whether Mr. Reed's testimony satisfies both the relevancy and reliability requirements of Federal Rule of Evidence 702. *Cf.* Fed. R. Civ. P. 56(e); *Major v. CSX Transp.*, 278 F. Supp.

---

[4] Under the analogous express warranty law for sellers—Virginia Code § 8.2-313—courts have held that "a plaintiff must plead: (1) the existence of a warranty; and, (2) breach of that warranty." *See, e.g., Knapp v. Zoetis, Inc.*, 3:20cv191, 2021 WL 1225970, at *12 (E.D. Va. Mar. 31, 2021).

[5] *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 275 (4th Cir. 2021) (quoting *United States v. Bonner*, 648 F.3d 209, 215 (4th Cir. 2011)).

4

2d 597, 604 (D. Md. 2003) ("The fact remains . . . that on a motion for summary judgment, the court may only consider evidence that is admissible.").

Under Rule 702, the Court may admit "testimony is (1) helpful to the jury in understanding the evidence or determining a fact at issue, (2) 'based on sufficient facts or data,' (3) 'the product of reliable principles and methods,' and (4) the product of a 'reliabl[e] appli[cation] of th[ose] principles and methods to the facts of the case.'" *Sardis*, 10 F.4th at 281 (alterations in original) (quoting Rule 702). Relevant testimony "helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017). For the reliability analysis, the Fourth Circuit has stated as follows:

> Reliability is a "flexible" inquiry that focuses on "the principles and methodology" employed by the expert. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594–95 (1993). Specifically, district courts must ensure that an expert's opinion is "based on scientific, technical, or other specialized *knowledge* and not on belief or speculation." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). And to the extent an expert makes inferences based on the facts presented to him, the court must ensure that those inferences were "derived using scientific or other valid methods." *Id.*
>
> *Daubert* provides four, non-exhaustive "guideposts" to aid in the required reliability analysis: (1) whether the expert's theory or technique "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error" inherent in the expert's theory or technique; and (4) whether the expert's methodology is generally accepted in his field of expertise. *Nease*, 848 F.3d at 229 (quoting *Daubert*, 509 U.S. at 593–94). But this list "neither necessarily nor exclusively applies to all experts or in every case," as the relevance of some factors can "depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 150 (1999) (citation omitted). Accordingly, trial courts are typically given "broad latitude" to determine which of these factors (or some other unspecified factors) are "reasonable measures of reliability in a particular case." *Nease*, 848 F.3d at 229 (quoting *Kumho Tire*, 526 U.S. at 153).

*Sardis*, 10 F.4th at 281 (emphasis and alteration in original). "[T]he proponent of the testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

Here, Royal Cup moves to exclude Mr. Reed's testimony because his opinions "[a]re [r]ank [s]peculation." (ECF No. 30, at 8.) According to Royal Cup, Mr. Reed's testimony, among other deficiencies, does not specify (1) how the filter basket separated from the tea brewer; (2) the condition of the basket when the incident occurred; or (3) the force required to remove the filter basket from the subject tea brewer. Royal Cup also states that Mr. Reed contradicted Crummett when he agreed that "there has to be some force applied to [the filter basket] to move it off the rails."[6] (ECF No. 30-5, at 46:17–21.) Lastly, Royal Cup says that Mr. Reed cannot prove that the changes he proposes—a locking device on the funnel, an onsite training manual, or an analog or digital control system—would have prevented the accident without first examining the defective basket or providing further evidence. (ECF No. 30, at 5.)

Crummett admits that Mr. Reed has not manipulated a filter basket in a Bunn-O-Matic tea brewer, (ECF No. 31-12, at 19:6–11), but argues that he has examined "exemplars" of the tea brewer as well as a photograph of and deposition testimony regarding the brewer and filter basket, (ECF No. 31, at 2, 3). According to Crummett, this suffices.

In preparing his expert report, Mr. Reed reviewed deposition transcripts and photographs of the brewer and filter basket. (*Id.* at 14; ECF No. 30-6.) The report describes the "[g]enerally accepted practice in providing safe design of equipment," and, as part of that description, cites to

---

[6] In her deposition, Crummett confirmed that she was "standing in front of the tea brewer" and "[n]ot making any contact with the tea brewer itself" when the accident occurred. (ECF No. 30-3, at 61:18–24, 62:3–5.) But she did say that she touched the spout on the brewer "seconds" before the accident. (*Id.* at 50:14–15.)

6

certain standards.[7] (*Id.*) Mr. Reed concludes that "[t]he combination of a front discharge, high elevation and the lack of any locking device makes this equipment dangerous as designed."[8] (*Id.* at 4.)

The report also concludes that other safety design features (adding an analog or digital control system, moving the funnel discharge position, attaching a latching mechanism or clip) would have made the tea brewer safer or prevented the incident; describes in detail multiple Bunn-O-Matic safety patents not implemented for the subject tea brewer; and compares the tea brewer to similar designs from other companies that included latches or other safety mechanisms. (*Id.* at 5–7.) According to Mr. Reed, "[f]ailure to provide [a locking] device was the cause of [Crummett's] injuries," and "Royal Cup failed in its duty to recognize and educate operators concerning" the hazard of the "funnel, nozzle discharge and position." (*Id.*)

On November 15, 2021, the Court held a *Daubert* hearing on Mr. Reed's testimony. During the hearing, Mr. Reed catalogued his extensive experience helping food industry representatives select equipment. Through this and similar work over the past forty years, he said he has learned and applied methodologies for choosing equipment and standards for identifying and isolating hazards. Based on Mr. Reed's testimony, report, and relevant experience, the Court does not doubt Mr. Reed's general knowledge in the area of food engineering and equipment. But

---

[7] These include "ANSI standard Z241.1-1981 (ZMS definition)"; "ANSI standard B11.19 or ANSI/ASAE standard S493"; "29 CFR 1910.212"; "International Plumbing Code section 412.3"; "AIA standards 1970"; "Anthropometric data Architectural Graphical standards / 1970." (ECF No. 30-6, at 2–3 n.1–6.)

[8] In a deposition, Mr. Reed also stated that "[w]ithout a locking mechanism, any kind of vibration could move [the filter basket] out of the system . . . [and] you have no way of ensuring that it's going to stay" there. (ECF No. 31-12, at 25:22–26:1, 26:7–9.)

7

the Court nevertheless finds that his testimony with regard to *this* tea brewer and filter basket do not satisfy the *Daubert* requirements and, as such, will exclude Mr. Reed's testimony.

Mr. Reed proposes two theories of causation: first, that the failure to install a locking device caused Crummett's injuries; second, that Royal Cup's failure to educate tea brewer operators on the hazards of the funnel's discharge and position caused Crummett's injuries.[9] Mr. Reed fails to support either theory with sufficient facts or data.

"For an expert opinion to be reliable, it must be 'based on scientific, technical, or other specialized *knowledge* and not on belief or speculation.'" *Sardis*, 10 F.4th at 290 (quoting *Nease*, 848 F.3d at 229) (emphasis in original). "One especially important factor for guiding a court in its reliability determination is whether a given theory has been tested." *Id.* (citing *Nease*, 848 F.3d at 231).

Despite the availability of the tea brewer, Mr. Reed did not conduct any testing on it prior to submitting his expert report.[10] Crummett asserts, however, that Mr. Reed examined "exemplars" of the subject tea maker. (ECF No. 31, at 2.) When the Court pressed Mr. Reed to explain what "exemplars" he examined, he said that he looked at a tea brewer in a restaurant, which he "believe[s]" was the same model as the subject tea brewer in this case. But that tea brewer did not have a filter basket and Mr. Reed presented no evidence that he conducted any relevant tests on it. (*See* ECF No. 30-5, at 35:1–5 (stating that Mr. Reed has "never interacted with th[e subject]

---

[9] Mr. Reed's report describes two other scenarios that may have contributed to the incident: (1) the basket material failed; or (2) an individual "bumped or engaged the basket and provided enough movement to extract the basket from the rails." (*Id.* at 7.) During the November 15 hearing, though, Mr. Reed stated that he does not know what caused the filter to disengage from the brewer. (*See also* ECF No. 30-5, at 26:2–5, 27:19–28:1, 29:6–11.)

[10] At the November 15 hearing, plaintiff's counsel stated that he has the tea brewer. Mr. Reed said that he saw the brewer the morning of the hearing and that, at that time, he tested "just how far [he] had to pull out th[e] basket to make it fall out."

8

type of filter basket with a tea brewer").) Without any proof or testimony confirming that the tea brewer in the restaurant was the same model as the tea brewer in this case, the Court does not accept that brewer as an appropriate exemplar; and, even if it did, Mr. Reed's cursory appraisal of the filter-basketless brewer fails to meet the reliability testing standards of Rule 702. *See Sardis*, 10 F.4th at 291 (finding the expert witnesses unreliable where they conducted no testing, "made no efforts to create a computer-generated or physical model" of the product, and declined the defendant's offer to build an exemplar of the product).[11]

"While a lack of testing is not dispositive, [the Fourth Circuit has] nonetheless recognized that 'a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field.'" *Sardis*, 10 F.4th at 289 (citation omitted) (quoting *Oglesby*, 190 F.3d at 249). Here, the lack of testing proves dispositive because Mr. Reed has failed to present other evidence to support his opinion. Though he refers to certain industry standards that he says apply generally to machines, the standards in his report support only discrete statements and he provides insufficient facts or data apart from his own knowledge to support his application of the standards to the tea brewer here.[12]

---

[11] *See also Alevromagiros*, 993 F.2d at 419 ("[The plaintiff] did not seek to introduce into evidence an undamaged ladder otherwise exactly like the one involved in the accident," nor did the expert "conduct[] a physical examination of an identical but undamaged ladder to determine its safe or unsafe design"); *Smith v. Sherwin-Williams Co.*, No. 2:02cv623, 2003 WL 22927343, at *2, 4 (E.D. Va. Mar. 20, 2003) (excluding the expert's testimony where the expert examined a "similar" can).

[12] For example, in a paragraph titled "Ergonomics," Mr. Reed cites the "Anthropometric data Architectural Graphical standards / 1970" to support the statement that the average American female stands "5 ft. 5.4 inches" tall. (ECF No. 30-6, at 4 n.6.) He then says, based on the "[d]imensions of the machine and the standard 34[-inch] high metal table," an American female of average height "would not be able to see into the funnel as it was designed." (*Id.* at 4.) He continues by concluding that "[h]aving the hazard designed to be near average eye level presents an especially dangerous condition." (*Id.*) In this section, the only fact that Mr. Reed supports with a specific standard is the height of the average American female.

9

The Court thus finds Mr. Reed's testimony unreliable under Rule 702.[13]

### B. *Motion for Summary Judgment*[14]

#### i. *Negligence and Breach of Implied Warranty (Counts One and Two)*[15]

To prevail on her negligence and breach of implied warranty claims, Crummett must prove that the product, as designed, was unreasonably dangerous and that Royal Cup's breach of duty proximately caused her injuries. *See Bly*, 713 F.2d at 1042–43; *Butler*, 809 F. Supp. at 1207.

---

[13] Though the Court excludes the entirety of Mr. Reed's testimony for lack of reliability, the Court notes that it also finds much of Mr. Reed's testimony irrelevant. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). For example, Mr. Reed stated that "better options" remained available and that including additional safety devices would not be "prohibitively expensive." (ECF No. 30-6, at 8.) But the fact that Royal Cup could have implemented additional safety measures does not render the tea brewer "inherently dangerous" under Virginia products liability law. *See Alevromagiros*, 993 F.2d at 420 ("The product need not incorporate the best or most highly-advanced devices."). When asked whether the industry standard would have required Royal Cup to retrofit the brewer to incorporate new safety features, Mr. Reed responded, "I don't know." Without citation to any industry standards, government regulations, or "direct evidence of what reasonable consumers considered defective," the Court finds these types of statements about what Royal Cup could or should have done irrelevant. *See Evans*, 295 Va. at 247–48, 810 S.E.2d at 469–70.

[14] Summary judgment becomes appropriate when the movant establishes that no genuine dispute of any material fact exists and the party is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). If a court finds that "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict," the court must deny summary judgment. *Anderson*, 477 U.S. at 252. But because the standard asks whether any *genuine* disputes of material fact exist, the mere presence of *some* factual disputes does not defeat a properly supported motion for summary judgment. *Id.* at 247–48.

[15] In its brief, Royal Cup seeks summary judgment on Crummett's negligence and breach of warranty claims because Crummett has not produced the defective filter basket that allegedly caused her injuries. It says that, without the basket, Crummett cannot prove that "the 'defective basket' was a proximate cause of her accident." (ECF No. 30, at 5.) Royal Cup says that scenarios other than a product defect, such as a cracked or broken filter basket, could have caused the accident instead. The Court need not address this argument; as show below, Crummet's lack of the basket proves irrelevant, because of her lack of an expert.

10

Without expert testimony, Crummett cannot satisfy her burdens of proof. Crummett lacks evidence of relevant safety standards—whether promulgated by the government or the industry or deemed the reasonable expectations of consumers—to establish some objective basis by which to judge Crummett's claims under either theory.[16] *See Evans*, 295 Va. at 247, 810 S.E.2d at 469. And, without any testimony on how the imprudent machine design would have caused Crummett's injury, a jury could not "properly proceed to find a verdict" for Crummett. *See Anderson*, 477 U.S. at 251; *see also Smith*, 2003 WL 22927343, at *5 ("Ordinarily, a finder of fact may not infer proximate causation where multiple causes potentially exist.").

Crummett says that her claims survive "even without supplemental expert testimony" because "Bunn . . . identified the defective and hazardous condition" and "designed and implemented solutions that held the basket in place during the brewing process." (ECF No. 31, at 19.) This, however, misinterprets the requirements of Virginia products liability law. *See Alevromagiros*, 993 F.2d at 420 ("The product need not incorporate the best or most highly-advanced devices."); *see supra* note 14. Because Crummett fails to present objective evidence to support these claims, the Court will grant Royal Cup's motion as to Count One and Two, alleging negligence and breach of implied warranty.

### ii. Breach of Express Warranty (Count Three)

Royal Cup broadly states that it "[is] entitled to summary judgment in [its] favor holding that [Crummett] cannot make out a prima facie case of liability against" it. (ECF No. 30, at 10.)

---

[16] The parties dispute certain facts relevant to these claims, such as whether the filter basket had cracked or broken before the incident. But "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

11

But nowhere in its briefing does Royal Cup explicitly address the distinct legal standard for breach of express warranty.[17]

Under Federal Rule of Civil Procedure 56(c)(3), the Court "need consider only the cited materials." Though the Court "may consider other materials in the record," the Court does not have a duty to do so, particularly where Royal Cup has cited no additional evidence on this issue and, in so doing, similarly left Crummett's response devoid of any discussion of the breach of express warranty claim. *Cf. Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (finding that the court does not have a "duty to sift through the record in search of evidence to support a party's opposition to summary judgment" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992))).

In this Court's June 4, 2021 Order denying Royal Cup's motion to dismiss the breach of express warranty claim, the Court held that "Crummett plausibly allege[d] that Royal Cup failed to 'provide service, installation and on-going maintenance of' the tea maker at issue." (ECF No. 11, at 5.) In so holding, the Court found that Royal Cup failed to offer "evidence that the promise it made in paragraph 3 of the Agreement did not form part of the basis of the bargain between Royal Cup and Country Cookin'," and that "[h]ad Royal Cup provided service and on-going maintenance of the tea maker, the filter basket may have remained secure on the tea maker and may not have malfunctioned as Crummett alleges." (*Id.* at 4.) The Court further noted that "discovery might reveal that user error caused the January 4, 2019 incident, or that Royal Cup provided top-notch service work that could not have detected the defect that caused the filter basket to fall." (*Id.* at 4–5.)

---

[17] Royal Cup previously moved to dismiss the breach of express warranty claim, and on June 4, 2021, the Court denied Royal Cup's motion. (ECF No. 11.) Since that time, the Court has received no additional arguments from either party on the issue.

12

Unlike the negligence and breach of implied warranty claims, which require an objective evaluation of the relevant standards, the breach of express warranty claim relies, at least in part, on facts that exist outside the world of expert testimony: the state of the filter basket at the time of the incident[18]; the maintenance services Royal Cup provided; what else happened that day (perhaps, as the plaintiff suggests, some seismic event[19]). But, because Royal Cup has cited no additional evidence to support the argument that paragraph 3 of the Agreement did not form a basis of the bargain and the briefs neglect to address this claim at all, the Court has come no closer to answering these questions.

Without any new facts to demonstrate that Royal Cup's affirmation does not, in fact, constitute a part of the parties' bargain, and without facts showing, for example, the condition of the filter basket at the time of the incident or that Royal Cup fulfilled its express warranty, the Court will deny Royal Cup's motion for summary judgment as to Crummett's breach of express warranty claim. *Cf. King v. Blackpowder Prods. Inc.*, No. 7:15cv212, 2016 WL 3982601, at *3 (W.D. Va. July 22, 2016) (denying a motion for summary judgment under a parallel statute for sellers because the "affirmation of fact is presumed to be part of the parties' bargain"); *Yates*, 257 Va. at 607, 514 S.E.2d at 608 (holding that the trial court erred in striking a breach of express warranty claim where the seller's affirmation of fact created an express warranty and the product did not comply with that warranty).

---

[18] The parties dispute the state of the filter basket. Royal Cup cites testimony of another Country Cookin' employee, who said that the subject filter looked like it was cracked or broken for "weeks, months," (ECF No. 30-2, at 25:6–26:1), and Crummett cites testimony of a Country Cookin' manager, who examined the subject filter after the accident and said that he did not remember "see[ing] anything wrong with it," (ECF No. 31-11, at 47:16–20). This dispute of material fact could, on its own, preclude summary judgment. *See* Fed. R. Civ. P. 56(a) (requiring that the movant show "that there is no genuine dispute as to any material fact").

[19] (*See* ECF No. 30-5, at 40:6–17.)

## III. CONCLUSION

For the reasons stated herein, the Court will grant Royal Cup's motion to exclude Mr. Reed's testimony. The Court will grant Royal Cup's motion for summary judgment as to Counts One and Two and will deny Royal Cup's motion as to Count Three.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: November 24, 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge